UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Mike Thompson,                    :
          Plaintiff,              :
                                  :
          v.                      :        File No. 1:06-CV-104
                                  :
CCA-LAC Medical                   :
Department, Vermont               :
Department of Corrections,        :
          Defendants.             :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 8 and 11)

Plaintiff Mike Thompson, an inmate proceeding *pro
se*, brings this action claiming "medical malpractice in
violation of the Eighth Amendment of the United States
Constitution."  Thompson alleges that he was called to
the prison medical department in the middle of the night
for a blood draw.  He protested, but was told that he
would be punished if he did not comply.  Thompson
subsequently discovered that the blood had been drawn by
mistake, and that the medical order had been intended for
another inmate with the same last name.

The defendants now move to dismiss the complaint
arguing that (1) the Vermont Department of Corrections
("DOC") is protected by Eleventh Amendment immunity, (2)
that defendant CCA-LAC Medical Department ("CCA") cannot

be held liable under § 1983 on a theory of *respondeat superior*, and (3) that in any event, Thompson has failed to raise an Eighth Amendment claim.  To the extent that Thompson seeks to bring a diversity claim for medical malpractice, the defendants contend that his claim is brought in the wrong venue.  For the reasons set forth below, I recommend that the defendants' motion to dismiss be GRANTED in part, and that Thompson's medical malpractice claim be TRANSFERRED to the Eastern District of Kentucky.

## Factual Background

For purposes of the pending motion to dismiss, the allegations in the complaint will be accepted as true. During the events in question, Thompson was a Vermont inmate incarcerated in Beattyville, Kentucky.  On November 7, 2005, the prison medical department informed him that a doctor had ordered his blood to be drawn to test for various diseases.  Thompson protested, insisting that the order was a mistake, but was told that he would be punished if he did not comply.  Thompson asked the nurse to confirm that he was the subject of the order, and noticed that "[t]he medical information and S.S.

number was crossed out and there was a note to draw blood anyway or he would be punished."

Although he informed the nurse that he had already been tested for the diseases she listed, he ultimately complied and allowed his blood to be drawn.  The nurse stuck his arm "numerous times causing huge black and blue bruises."  Thompson also claims that he continues to suffer numbness in his hands and arms as a result of the incident.  Thompson later discovered that the order had been a mistake, and had been intended for another inmate with a similar name.  "[I]t was a Matt Thompson who needed the blood work and not the Plaintiff after all."

Discussion

I.  <u>Motion to Dismiss Standard</u>

On a motion to dismiss, "a court has to consider the legal sufficiency of the claim as stated in the complaint and is not to weigh facts underlying the claim or the merits of the case."  <u>Esden v. Bank of Boston</u>, 5 F. Supp. 2d 214, 216 (D. Vt. 1998) (citing <u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir.1985)).  "In ruling on such a motion, the court must look only to the allegations in the complaint and any documents attached to or

incorporated by reference in the complaint." <u>Dangler v.
New York City Off Track Betting Corp.</u>, 193 F.3d 130, 138
(2d Cir. 1999).  Moreover, the court must assume all
well-pleaded factual allegations to be true and draw
reasonable inferences in the light most favorable to the
plaintiff.  <u>See</u> <u>Shakur v. Selsky</u>, 391 F.3d 106, 112 (2d
Cir. 2004); <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir.
1996).  Dismissal is impermissible unless "it appears
beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to
relief." <u>Flores v. S. Peru Copper Corp.</u>, 343 F.3d 140,
148 (2d Cir. 2003) (quoting <u>Conley v. Gibson</u>, 355 U.S.
41, 45-46 (1957)).

II.  <u>Eleventh Amendment Immunity</u>

The defendants argue that the Vermont DOC is
protected from suit in this Court by the Eleventh
Amendment.  Pursuant to the doctrine of sovereign
immunity, the Eleventh Amendment bars suits by private
citizens against a state or its agencies in federal court
unless the state has waived its immunity or Congress has
properly abrogated that immunity.  <u>See</u> <u>Pennhurst State
School & Hosp. v. Halderman</u>, 465 U.S. 89, 98-99 (1984);

4

<u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 55 (1996).  With respect to this case, it is clear that neither Vermont nor Congress has waived the sovereign immunity that protects the DOC from a damages action brought against it.  There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 67 (1989).  It is equally clear that Vermont has not waived its sovereign immunity under § 1983.  <u>See</u> 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves Eleventh Amendment immunity for all claims not explicitly waived).  Thompson's suit in this Court against the DOC is, therefore, barred.

In response to the motion to dismiss, Thompson asserts that his claims against the DOC should remain in the case to the extent that he has "invoked the supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. § 1367."  (Paper 11-1 at 1). A court may decline to exercise supplemental jurisdiction

over state law claims when the Court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(2).  Furthermore, Vermont has specifically reserved its sovereign immunity under the Eleventh Amendment for tort law claims against it.  See 12 V.S.A. § 5601(g) ("Nothing in this chapter waives the rights of the state under the Eleventh Amendment of the United States Constitution.").  Consequently, I recommend that Thompson's claims against the DOC be DISMISSED.

III.  *Respondeat Superior* Liability for CCA

Thompson alleges that CCA is responsible for the unconstitutional conduct of one of its nurses.  It is well established that an employer is not liable for the acts of its employees under the tort theory of *respondeat superior* in suits brought under § 1983.  See Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Although this rule was initially established in the context of municipal employers, it has been extended to private employers as well.  See Iskander v. Village of Forest Park, 690 F.2d 126, 128-29 (7th Cir. 1982); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982); Draeger v. Grand Central, Inc., 504 F.2d 142, 145-46 (10th Cir. 1974).

6

Therefore, a private employer such as CCA will not be liable for the constitutional tort of an employee "unless the plaintiff proves that "action pursuant to official . . . policy of some nature caused a constitutional tort." Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir. 1990) (quoting Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 691 (1978)); Vega v. Fox, 2006 WL 397941, at *5 (S.D.N.Y. Feb. 21, 2006).

Here, Thompson does not claim that the nurse in question followed CCA policy when she drew his blood. Instead, the complaint makes clear that the nurse made a mistake, and alleges that her technique caused injuries to Thompson's arms and hands.  Although Thompson asserts that "CCA is liable because they were the ones that purposely subjected Plaintiff to this horrendous ordeal," the complaint alleges only that a mistake was made by a CCA employee, and not the organization itself.  In the absence of an allegation that the nurse or any other employee was following an established policy, pattern or practice set forth by CCA, Thompson's claims against CCA should be DISMISSED.[1]

---

[1]  Any such claim would be plainly frivolous, since it cannot be argued that CCA would have a policy requiring mistaken blood draws.

IV.  <u>Motion to Amend and Venue</u>

In response to the motion to dismiss, Thompson asks that the Court grant him leave to amend his complaint to add the nurse and the DOC clinical director as defendants.  (Paper 11-1 at 1).  Fed. R. Civ. P. 15(a) provides that "leave [to amend] shall be freely given when justice so requires."  Nonetheless, district courts have discretion to deny leave "where amendment would be futile."  <u>In re Tamoxifen Citrate Antitrust Litig.</u>, 466 F.3d 187, 220 (2d Cir. 2006) (citing <u>Van Buskirk v. New York Times Co.</u>, 325 F.3d 87, 91-92 (2d Cir. 2003)).  In this case, for the reasons discussed below, I find that Thompsons' Eighth Amendment claim is without merit, and thus recommend his motion to add parties to that claim be DENIED.  With respect to Thompson's diversity action for medical malpractice, however, I recommend that the Court allow the addition of the nurse in question, and that the case be TRANSFERRED to Kentucky on grounds of improper venue.

A.  Constitutional Claims

Thompson brings his constitutional claims under the Eighth Amendment's prohibition against cruel and unusual

8

punishment.  The Eighth Amendment protects prisoners from cruel and unusual punishment in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials and conduct that offends "evolving standards of decency."  See Hudson v. McMillan, 503 U.S. 1, 5 (1992); Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97, 102, 104-05 (1976).  To establish an Eighth Amendment violation based on a claim that a prison official has placed an inmate's health in danger, the inmate must show that the prison official acted with "deliberate indifference" to the inmate's serious medical needs.  Estelle, 429 U.S. at 104-05.

As the Second Circuit has explained, "the deliberate indifference standard embodies both an objective and a subjective prong."  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  Under the objective prong, the first question is whether the inmate was actually deprived of adequate medical care.  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).  "As the Supreme Court has noted, the prison official's duty is only to provide reasonable care."  Id. (citing Farmer v. Brennan, 511 U.S. 825, 832, 844 (1994)).

"Second, the objective test asks whether the inadequacy in medical care is sufficiently serious." <u>Id.</u> at 280.  "'The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . ." <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir. 1986).  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991) (citation omitted). Thus, Eighth Amendment protection is limited to "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998).  Factors to be considered include whether "'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" <u>Salahuddin</u>, 467 F.3d at 280 (quoting <u>Chance</u>, 143 F.3d at 702).

The second requirement for liability under the Eighth Amendment is subjective: "the charged official

10

must act with a sufficiently culpable state of mind."
<u>Id.</u>   That state of mind is deliberate indifference,
which has been described as "a mental state equivalent to
subjective recklessness, as the term is used in criminal
law."  <u>Id.</u> (citing <u>Farmer</u>, 511 U.S. at 839-40).
"[R]ecklessness entails more than mere negligence; the
risk of harm must be substantial and the official's
actions more then merely negligent."  <u>Id.</u> (citing <u>Farmer</u>,
511 U.S. at 835-37).

In this case, the alleged constitutional violation
is a forced blood draw resulting in bruising and
numbness.  The Supreme Court has noted that a blood test
"would not be considered offensive even by the most
delicate."  <u>Breithaupt v. Abram</u>, 352 U.S. 432, 436
(1957).  Similarly, the Second Circuit recently commented
that the drawing of blood is "quite a minor intrusion, of
the sort that ordinary citizens voluntarily submit to
routinely for medical purposes."  <u>Nicholas v. Goord</u>, 430
F.3d 652, 676 (2d Cir. 2005) (citing <u>Skinner v. Ry. Labor
Executives' Ass'n</u>, 489 U.S. 602, 625 (1989)).

In the Eighth Amendment context, several lower
courts have concluded that a forced blood draw on a

11

prisoner, even when it is performed poorly and causes injury, is not the sort of conduct that amounts to a constitutional violation.  See, e.g., Johnson v. Illinois Dep't of Corrections, 2006 WL 741318, at *6 (S.D. Ill. March 22, 2006).  The defendants appropriately highlight Boreland v. Vaughn, 1993 WL at *6 (E.D. Pa. March 3, 1993), aff'd, 21 F.3d 300 (3d Cir. 1994), where, as in this case, a prisoner was forced to undergo a blood draw to test for certain diseases.

> According to Boreland, the needle caused severe
> pain, dizziness, weakness throughout his body,
> painful swelling in his left hand, and left a
> scar.  Even assuming that Boreland's injuries
> are real, the conduct in question is not
> sufficient to constitute a violation of the
> Eighth Amendment.  The use of a needle to draw
> blood is hardly the cruel and unusual punishment
> contemplated by the Eighth Amendment.

Boreland, 1993 WL 62707, at *6.  As in Boreland, this Court should find that the nurse's conduct, and the resulting harm to Thompson's arms and hands, did not cause the sort of "degeneration or extreme pain" required for an Eighth Amendment violation.  Chance, 143 F.3d at 702 (internal quotation marks omitted).

In response to the motion to dismiss, Thompson contends that the nurse's actions were malicious.  "I was

12

in extreme pain during the events when the nurse kept
sticking me over and over again on both arms so
sadistically that both arms became black and blue and
were left lethargic for weeks after the incident."
(Paper 11-1 at 2).  If Thompson were to amend his
complaint to add an allegation of malicious or sadistic
conduct, his failure to show serious harm would become
less of an impediment.

> When prison officials maliciously and
> sadistically use force to cause harm,
> contemporary standards of decency always are
> violated.  This is true whether or not
> significant injury is evident.  Otherwise, the
> Eighth Amendment would permit any physical
> punishment, no matter how diabolic or inhuman,
> inflicting less than some arbitrary quantity of
> injury.  Such a result would have been as
> unacceptable to the drafters of the Eighth
> Amendment as it is today.

Hudson v. McMillian, 503 U.S. 1, 9 (1992).  His response
to the motion to dismiss, however, concedes that with
respect to the nurse and DOC's clinical director, "it is
only speculation as to whether or not their intention was
to harm plaintiff."  Speculative allegations in a
complaint are insufficient, and will not withstand a
motion to dismiss.  See, e.g., Aiken v. Nixon, 236 F.
Supp. 2d 211, 221 (N.D.N.Y. 2002).  Consequently, even if

the Court were to accept Thompson's allegations of malicious conduct, his Eighth Amendment claim against the nurse would be futile.

Thompson has also failed to show that the DOC's clinical director had any involvement in his blood draw. The sole allegation with respect to the clinical director is that s/he "is responsible for the medical providers for the inmates of VT D.O.C. whether we are in or outside of state." It is, therefore, plain that Thompson seeks to sue the clinical director on the basis of his/her position as a supervisor.

The personal involvement of a supervisory defendant may be shown by evidence that the defendant: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citations

14

omitted).  Thompson's claim in this case is that he was
mistakenly called to the prison medical department in the
middle of the night, informed that he needed to give a
blood sample, and was forced to give blood against his
will.  There is no indication that the clinical director
played any role in these events, or that s/he was aware
that a mistake was being made.  Consequently, Thompson
has failed to propose a viable constitutional claim
against this proposed party.

B.  Medical Malpractice Claim

In addition to his constitutional claims, Thompson
seeks to bring a medical malpractice action.  On this
claim, Thompson argues that the federal courts have
jurisdiction by virtue of diversity of citizenship.
Specifically, the complaint alleges that Thompson is a
Vermont resident and that CCA is located in Kentucky with
a main headquarters in Tennessee.  Thompson's motion to
amend implies that the nurse is also located in Kentucky.
Accordingly, if the only remaining defendants are the
nurse and perhaps her employer (CCA) on a theory of
*respondeat superior*, then diversity of citizenship has

15

been established.[2]

The defendants' argument with respect to Thompson's malpractice claims is that venue in this Court would be improper.  Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1404(a), 1406(a) permit the Court to dismiss a claim where venue is improper.  The requirement of proper venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred."  Leon C. Baker, P.C. v. Bennett, 942 F. Supp. 171, 175 (S.D.N.Y. 1996).

In diversity cases, venue lies in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to

---

[2]  For the reasons set forth above, the Vermont DOC may not be sued in federal court.  A malpractice action against the DOC's clinical director in his/her official capacity would be similarly barred.  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  To the extent that Thompson seeks to bring a tort action against the clinical director, his allegations lack any suggestion that the clinical director had responsibility for the actions of a nurse in Kentucky.  Furthermore, Vermont law bars negligence actions against state employees.  12 V.S.A. § 5602.

personal jurisdiction at the time the action is
commenced, if there is no district in which the
action may otherwise be brought.

28 U.S.C. § 1391(a); see also Amaker v. Haponik, 198

F.R.D. 386, 391 (S.D.N.Y. 2000). Subsection (1) of §

1391(a) arguably does not apply here, since the original

defendants did not all reside in the same district.

Moreover, it is not clear that CCA, a Tennessee-based

company, "resides" in Kentucky.

Subsection (2) determines venue based upon where "a

substantial part of the events or omissions giving rise

to the events occurred . . . ." 28 U.S.C. § 1391(a).

The Second Circuit has instructed lower courts to "take

seriously the adjective 'substantial'" in construing "the

venue statute strictly." Gulf Ins. Co. v. Glasbrenner,

417 F.3d 353, 356 (2d Cir. 2005). In this case, the

principal allegations of misconduct center on the

correctional facility in Kentucky. Consequently, under

subsection two of § 1391(a), the "substantial part of the

events" took place in Kentucky, and venue is most

appropriate there. See Sadler v. Rowland, 2004 WL

2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought

by Connecticut prisoner against prison personnel in

Virginia transferred to Virginia).  Because this action could have been brought in Kentucky, subsection (3) of § 1391(a) is inapplicable.  <u>See</u> Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing <u>F.S. Photo, Inc. v. Picturevision, Inc.</u>, 48 F. Supp. 2d 442, 448 (Del. D.C. 1999)).

Having determined that venue is most appropriate in Kentucky, the Court must decide whether the case should be dismissed, or whether the interest of justice call for a transfer.  28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); <u>In re Sorrells</u>, 218 B.R. 580, 585 (B.A.P. 10th Cir. 1998) (district court has no discretion to retain a case in which venue is improper).

The defendants contend that dismissal is appropriate because Thompson's allegations do not satisfy the $75,000 amount-in-controversy requirement under 28 U.S.C. § 1332. The plaintiff bears the burden of showing that his claims

rise to this level.  See Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 273 (2d Cir. 1994).  The burden, however, is "hardly onerous," as it presumes "that the face of the complaint is a good faith representation of the actual amount in controversy."  Scherer v. Equitable Life Assurance Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (citing Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).  The Second Circuit has held that "the legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.  If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff."  Tongkook Am., Inc. v. Shipton Sportwear Co., 14 F.3d 781, 785-86 (2d Cir. 1994).

Here, Thompson claims that his arms were bruised and that his hands and arms continue to be numb.  The complaint seeks $150,000 in compensatory damages from CCA, and $80,000 in punitive damages.  With respect to the compensatory damages claim alone, and given the alleged long-term impact of the alleged malpractice on

19

Thompson's body, this Court is not able to say that recovery in this amount is a "legal impossibility." <u>Tongkook Am., Inc.</u>, 14 F.3d at 785-86.  Therefore, for present purposes, the Court should find that the amount-in-controversy requirement has been met.

The Court should also find that, in the interest of justice, transfer of the medical malpractice claim is preferable to dismissal.  If this Court were to dismiss Thompson's malpractice claim, he would need to re-file in Kentucky.  However, Kentucky has a one-year statute of limitations for personal injury actions.  K.R.S. § 413.140.  The events in this case took place approximately 13 months ago.  Therefore, if the case is dismissed without prejudice, there is a danger that it will be barred in Kentucky as untimely.[3]  In contrast, a transfer will preserve Thompson's May, 2006 filing date. In light of a possible statute-of-limitations bar, I recommend that Thompson's tort claim be TRANSFERRED to the United States District Court for the Eastern District of Kentucky.

---

[3]  The defendants have moved pursuant to 28 U.S.C. § 1406(a).  When a Court transfers a case under § 1406, the law of the transferee court generally applies.  <u>See</u> <u>Levy v. Pyramid Co.</u>, 871 F.2d 9, 10 (2d Cir. 1989); <u>Stephens v. Norwalk Hospital</u>, 162 F. Supp. 2d 36, 40-41 (D. Conn. 2001).

<u>Conclusion</u>

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 8) be GRANTED in part and DENIED in part.  Specifically, I recommend that all claims against the Vermont DOC, and Thompson's Eighth Amendment claim against CCA, be DISMISSED.  With respect to Thompson's motion to amend his complaint (Paper 11), I recommend that the motion to add the DOC's Clinical Director be DENIED.  The motion to amend to add nurse Mary King should be DENIED with respect to Thompson's Eighth Amendment claim, and GRANTED with respect to his medical malpractice claim.  With the only remaining claim being a diversity malpractice action against King and CCA, I recommend that this case be TRANSFERRED to the United States District Court for the Eastern District of Kentucky.

Dated at Burlington, in the District of Vermont, this 18th day of December, 2006.

<u>/s/ Jerome J. Niedermeier</u>
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of

the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).